Filed 12/31/25  P. v. Day CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | C100539 |
| Plaintiff and Respondent, | (Super. Ct. No. CR0001679) |
| v. | |
| JUSTIN SCOTT DAY, | |
| Defendant and Appellant. | |

A jury found defendant Justin Scott Day guilty of three counts of willful infliction of corporal injury resulting in a traumatic condition on a person, J. Doe, with whom he had a dating relationship (Pen. Code, § 273.5, subd. (a)—counts 1, 3 & 5),[1] two counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)—

---

[1]  Undesignated statutory references are to the Penal Code.

1

counts 2 & 6), and one count of the lesser included offense of assault (§ 240—count 4).[2] In a bifurcated proceeding, defendant admitted he had a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12.)

The court sentenced defendant to an aggregate term of eight years in prison: four years on count 1 (the low term of two years, doubled for the prior strike) and consecutive two-year terms on counts 3 and 5 (one-third the middle term of three years, doubled). The sentences on counts 2, 4, and 6 were stayed pursuant to section 654.

On appeal, defendant challenges the admission of evidence of: (1) his parole status, (2) his methamphetamine use, and (3) his calls and text messages with Doe while he was in jail. He further contends the cumulative effect of these alleged errors necessitates reversal. Defendant also argues the trial court erred by failing to exercise its discretion to strike his prior strike pursuant to section 1385. Additionally, defendant asserts, and the People concede, that he is entitled to additional days of presentence credit. We will accept the People's concession and modify the judgment accordingly. The judgment is otherwise affirmed.

## I. BACKGROUND

On March 23, 2023, officers from the Grass Valley Police Department were dispatched to Doe's apartment. When they arrived, they could hear yelling from inside. Doe opened the door. She appeared disheveled and her face, neck, and chest were red. Her eye makeup was running down her cheek. There was redness and bruising in the shape of handprints on her neck. The injuries to her skin were raised and swollen. Initially, she said she was fine and that she had been in a yelling argument with defendant. After officers separated Doe and defendant into different areas of her apartment, she gestured for an officer to be quiet and then gestured that she had been

---

[2] The jury found defendant not guilty of assault by means of force likely to produce great bodily injury with respect to count 4.

2

choked. An officer took her out of the apartment and onto the front porch. There, she said she found out defendant had been cheating on her and confronted him about it. He became aggressive and started arguing. He grabbed her throat with both hands and started to choke her. He headbutted her in the face several times while they were in the bedroom. She freed herself and went to the kitchen, where he followed her, continued to call her names, and then choked her again and pushed her against the kitchen window. They went back into the bedroom where he pushed her onto the bed and placed her into a headlock. She told officers she did not know how long the headlock lasted: "It could have been five hours because she was kind of going in and out." She said she did not lose consciousness and her breath was not restricted. She was not asked if she was dizzy, woozy, lightheaded, or faint, or if she had trouble swallowing or moving her neck. Doe said defendant threw bottles at her. The officers did not find any thrown or broken bottles or damage to the window.

Doe told officers she felt fine and did not need medical attention. She appeared reluctant to answer these questions. She said she wanted an emergency protective order and wanted it to require defendant to move out. When an officer returned to deliver the protective order, Doe was holding an icepack to her forehead.

Initially, defendant told law enforcement his argument with Doe did not get physical at all. When he was asked if there was any reason why Doe would have marks on her, defendant said he "pulled her in for a hug," and wrapped his arms around her back and neck to calm her down while they were arguing.

Body camera footage from the officers who responded to the incident was played for the jury.

A physician who testified as an expert on strangulation opined based on the police report, the photos of Doe taken by law enforcement, the body camera footage, and her statements at the preliminary hearing, that there was a very reasonable chance Doe was unconscious at some point during the incident. The physician further concluded the

3

photographs of Doe taken by the officers was consistent with multiple episodes of strangulation including chokehold strangulation and manual hand strangulation. He also testified regarding the risks of strangulation.

While in custody, defendant called Doe in violation of the protective order. Two days after his arrest, the couple discussed the incident in a series of four recorded calls that were played for the jury. In the first call, defendant told Doe, "I'm sorry that this happened," and they had the following exchange:

"[Defendant] . . . I'm hoping you could just, you know what I mean, make a statement in court saying that I didn't hurt or hit or abuse you at all.

"[Doe]: I'm just kind of starting to get a black eye, [defendant].

"[Defendant]: What?

"[Doe]: I'm getting a black eye.

"[Defendant]: Are you serious?

"[Doe]: From when you had, when you headbutted me.

"[Defendant]: Oh my God. I don't remember headbutting you.

"[Doe]: Yeah, you held me there, and you headbutted me.

"[Defendant]: No, I didn't. I might have –

"[Doe]: You did.

"[Defendant]: – I might have like did that when you first woke me up. Baby, I'm so sorry." Shortly thereafter, Doe asked defendant, "why did this happen?" and "why did you start doing meth again, you know?"

In the second call, Doe responded to defendant's protestations that he did not speak to another woman that night by saying, "you still freaked out on me on meth, you know?"

In the third call, Doe said, "Everyone knows what you did. Everyone's texting me asking if I'm okay." Defendant replied, "Well, I love you baby. It breaks my heart for me to hear that." Doe told defendant, "I love you, but I can't be with you. It's not safe."

Doe told defendant that he held her down by the face, headbutted her, choked her, and slammed her. He denied doing each of these things. He said, "I remember yelling at you and getting mad at you, but that's it."

In the fourth call, defendant repeatedly promised to "make it right."

The jury also heard additional telephone calls and text messages between defendant and Doe that took place while defendant was in jail.

The People called Doe as a witness at trial and, on the advice of counsel, she invoked her Fifth Amendment right against self-incrimination as soon as she was asked what happened on the night of March 23, 2023. Accordingly, the court found her unavailable as a witness.

As part of defendant's case, the jury was read portions of Doe's testimony at his preliminary hearing. In it, Doe testified that she lied to the officers because she was upset with defendant and wanted him to leave. Doe testified that defendant had choked her with her consent during sex. Her breathing was not restricted. She recalled some of her statements to officers, but did not remember telling them that defendant wrapped her head in a headlock and had her throat in his arms or that he grabbed her throat and pushed her into the kitchen window. She also did not recall telling officers that defendant pushed her on the bed and put her into a second headlock. She testified she told officers defendant had headbutted her because they had bumped heads, and she was upset and confused. Later, she testified that their heads had not touched, and she had misinterpreted it when he was leaning in trying to talk to her.

On rebuttal, the prosecution called an investigator for the El Dorado County District Attorney's office to testify as an expert on intimate partner violence and the cycle of violence. He explained the cycle of violence has three stages: the tension building stage, the incident or acute violence stage, and the honeymoon or reconciliation stage. He explained it is common for victims to change their story, recant, or deny that anything has occurred. He explained there are different reasons victims could give inconsistent

5

statements including having a memory gap that is pieced together through talking to others, a change in how they feel, or trying to protect the abuser.

## II. DISCUSSION

*A.      Admission of Evidence of Defendant's Parole Status*

Defendant argues the trial court violated his due process right to a fair trial by allowing the prosecution to introduce evidence of his parole status. He contends this evidence should have been excluded under Evidence Code section 352 because his parole status was not relevant to the issues of the case and its prejudicial effect was extremely high. We disagree.

*1.      Trial Court Proceedings*

Prior to trial, defendant filed a motion in limine seeking an order that no testifying witness refer to the fact that he was on parole at the time of his arrest. He argued it was more prejudicial than probative under Evidence Code section 352.

During the initial hearing on the motion, the prosecution opposed the motion and explained that while it would not use defendant's parole status in argument, defendant's parole status was "deeply intertwined in the statements of the victim" and mentioned on the body camera footage. The prosecution also argued it was probative and true that defendant was out of custody for a very limited period of time when the incident took place, and their relationship started when he was in custody. The prosecution argued that within a month or two of being out of custody, there were a number of incidents, which proved a cycle of violence. Defense counsel argued the evidence was irrelevant and prejudicial, and the body camera footage could be edited or stopped and restarted.

The prosecution submitted supplemental briefing that further argued defendant's parole status was probative of defendant's case that Doe was angry with him for his infidelities and used his status as a parolee to have him arrested. The prosecution explained the evidence was offered for the limited purpose of providing the true context of the facts, circumstances, and witness statements to the jury. Accordingly, the

prosecution explained the People would not be opposed to a limiting instruction that the jury could not consider defendant's parole status for purposes of determining guilt.

The court ruled that the body camera videos were admissible, and the jury would be given a limiting instruction. The court ordered the prosecution to redact portions of the footage where the officers elicited more detailed information from defendant about his parole, but allowed Doe's "incidental" statements about defendant's parole status to remain.

In the body camera footage from the incident played for the jury, Doe twice told the responding officers that defendant was on parole: "You guys gotta take him, he's on parole"; and, "He got put on parole."

In rebuttal and without defense objection, the prosecution introduced a jail text message where defendant stated in, part, to Doe, "They can't tell the jury that I'm on parole."

The jury was instructed that, "[d]uring the trial, you heard testimony regarding the defendant's custody status and testimony related to the defendant being on parole. You are not to consider this evidence in determining his guilt."

2.    *Analysis*

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The trial court may not admit irrelevant evidence, but it has broad discretion in determining whether evidence is relevant. (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.) It also has discretion to exclude even relevant evidence under Evidence Code section 352 "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "A trial court's exercise of discretion in admitting or excluding

7

evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

We cannot conclude the trial court abused its discretion in not requiring the prosecution to edit out the portions of Doe's initial statements to law enforcement that mentioned defendant's parole status. Doe was unavailable at trial and the credibility of her previous conflicting statements was a focus of the trial. Doe's statements that defendant was on parole and that the officers had to take him because he was on parole were part of her initial statements. Further, these statements were relevant to the jury's evaluation of Doe's motivations and the veracity of her initial and subsequent version of events. At the preliminary hearing on May 23, 2023, Doe testified she did not recall telling officers that defendant was on parole and had to leave. She testified she did remember telling officers she wanted them to take defendant to jail and that she did so because she was angry with him. Hearing the actual statements Doe made to the officers was relevant for understanding whether her later assertion that she had made these statements only because she was angry with defendant was credible. Her statements about his parole status demonstrated she had in mind the potential consequences to defendant of her initial statements when she made them and were probative of their veracity.

Defendant did not object to the admission of his own mention of his parole status in his text messages to Doe. To the extent he argues on appeal that he had already objected to the admission of his parole status generally and any further objection would have been futile, it is not clear this was sufficient to preserve for appeal an objection that this particular reference to his parole status should have been redacted for its relevance or cumulative prejudicial effect. The trial court had analyzed other references to defendant's parole status separately and ordered them removed.

8

Regardless, we disagree with defendant's assertion that any reference to his parole status should have been excluded under Evidence Code section 352. The brief mentions of his parole status that the jury heard took up little time, and were unlikely to confuse the issues, or mislead the jury. The jury was not told why defendant was on parole. We cannot conclude the mere mention that defendant was on parole "was inflammatory or substantially likely to elicit an impermissible emotional response from the jury. Evidence that defendant was on parole . . . was not so emotionally charged as to inhibit its logical evaluation by the jury. Nor would the evidence, by virtue of its nature, have prompted the jury to punish defendant. No abuse of discretion appears." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1092.) Likewise, we disagree with defendant's assertion that the trial court deprived him of his due process right to a fair trial by allowing the jury to hear this evidence. "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*People v. Falsetta* (1999) 21 Cal.4th 903, 913.) This was not the case here.

B.       *Admission of Evidence of Defendant's Methamphetamine Use*

Defendant argues the trial court deprived him of his due process right to a fair trial by allowing the prosecution to introduce evidence of his methamphetamine use. He contends the trial court abused its discretion by not excluding this evidence under Evidence Code section 352. We disagree.

1.       *Trial Court Proceedings*

Prior to trial, defendant filed a motion in limine to prohibit Doe from opining that defendant was under the influence of methamphetamine on March 23, 2023. Defendant argued there was no other admissible evidence that he was under the influence other than her opinion, and that the evidence was not relevant and should be excluded under Evidence Code section 352. In response, the prosecution explained that defendant's methamphetamine use was admissible because it would be offered through his own statements or adoptive admissions from the jail calls. Further, the evidence was relevant

9

because the statements were "in the context of his use or influence at the time that the abuse occurred," and it was relevant to prove the abuse occurred. The prosecution also argued defendant's methamphetamine use was relevant to Doe's credibility because it explained why he told Doe he did not remember doing specific acts that she accused him of. The prosecution argued "it is well established that the use of substances involves the numbing of the faculties as to affect the capacity to observe, to recollect or to communicate."

The trial court initially explained, "I think there are some admissions made or at least arguable admissions made. It would go to the issue of credibility if nothing else." The court ruled the prosecution could not expand on the issue by introducing evidence about the effects of methamphetamine. The prosecution asked if it could "comment on it in closing arguments." The court replied, "Of course. To the extent that the evidence comes in that supports it, and as you indicated in your briefing I think we all have some knowledge that substance use affects our abilities in certain ways. So as long as you don't go outside what the evidence is, that's fine."[3] Later, the court explained its ruling in more detail: "[Defendant] does make admissions about using meth. There is some indication that I think could be an inference that he was using meth or had used meth that day based on his own statement. I do think it goes to credibility. [¶] That is what I ruled again tentatively pending receiving all of the briefing. I have received the briefings and I haven't changed my ruling. I did, however, deny [the prosecution]'s request to bring in an expert about the effects of methamphetamine. I think that goes a step too far." When discussing whether Doe could be asked if defendant was under the influence of

---

[3] Whether the prosecutor's closing argument ultimately improperly used the evidence that the trial court properly admitted is a separate issue that defendant did not properly raise.

10

methamphetamine for purposes of impeachment,[4] the court added:  "Here's the reason why I still think it is more probative than prejudicial.  Number one, it would go to credibility because it also potentially explains some of his not remembering everything that was going on that night.  He does make the admission, so it's not like [Doe] would be testifying to something he didn't already admit."

    2.    *Analysis*

The trial court did not abuse its discretion in admitting references to defendant's methamphetamine use in the jail conversations between defendant and Doe.  These references, which made clear defendant was using methamphetamine at the time of the charged crimes, were relevant to understanding their discussions.  In the first jail call played for the jury, shortly after confronting defendant with what he had done, Doe asked him "why did this happen?" and "[w]hy did you start doing meth again, you know?"  In the second call, Doe said, "you . . . freaked out on me on meth" and "you were still doing meth," and defendant agreed:  "I was.  I'm sorry."  As the trial court explained, the references to methamphetamine use were relevant to explaining why, when Doe confronted defendant with her recollection of events, he at times stated he did not remember what she described.  Defendant argues that his inability to recall events was not genuinely disputed.  This point is debatable.  Moreover, it misses the larger issue.  The jury was tasked with making sense of the various versions of events they were presented with.  In one exchange, Doe mentioned defendant headbutted her and he responded, "Oh my god.  I don't remember headbutting you."  In another, he stated he only remembered yelling and getting mad at her.  Their references to his methamphetamine use put it into context and explained their different version of events and how defendant could assert he did not remember things that would otherwise seem to

_____

[4]  During the preliminary hearing, Doe testified that defendant was not under the influence of any substances at the time of the incident.

11

be very memorable. It was therefore relevant to the jury's interpretation of their discussions and the veracity of their statements.

The trial court did not abuse its discretion in concluding the probative value of the evidence was not substantially outweighed by its prejudicial impact under Evidence Code section 352. The references did not necessitate an undue consumption of time. Some of the statements by Doe and defendant suggested that his methamphetamine use was a source of conflict in their relationship and contributed to his actions on March 23, 2023. Doe stated, "I wasn't happy because you were on meth and, you know?" When defendant promised he would not hurt her again, Doe expressed skepticism by stating, "You're gonna start using meth again." Doe also told defendant, "I don't know if that's how you are or if that was the drugs," and "who you are when you're high is completely different than who you really are." We disagree with defendant's assertion that the evidence prejudiced the jury against him because methamphetamine use carries "particularly strong negative connotations in the public consciousness, associated with violent and erratic behavior, addiction, and criminal activity" and "transforms the focus from whether the alleged crimes occurred to whether [defendant] is the type of person who would commit such crimes due to substance abuse." The evidence of defendant's drug use at the time of the offense was less inflammatory than the evidence of the charged crimes, and the trial court prohibited the prosecution from expanding on the issue by introducing evidence about the effects of methamphetamine use generally. As such, we cannot conclude the court abused its discretion in admitting it. We also disagree with defendant's assertion that the trial court deprived him of his due process right to a fair trial by allowing the jury to hear this evidence. The evidence was not "so prejudicial as to render the defendant's trial fundamentally unfair." (*People v. Falsetta, supra*, 21 Cal.4th at p. 913.)

*C.*     *Admission of Calls and Text Messages with Doe*

Defendant argues the evidence of his jail calls and text messages with Doe should have been excluded under the Sixth Amendment because it was testimonial, and he was not given an opportunity to cross-examine her at trial.  Even assuming without deciding that this argument was not forfeited for failure to raise it in the trial court, it is unavailing because the statements at issue are not testimonial.

" 'The Sixth Amendment bars the admission of testimonial hearsay from a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a previous opportunity for cross-examination.' [Citations.]  The Sixth Amendment is concerned only with those hearsay statements that qualify as 'testimonial.' [Citations.]  'The high court has yet to state definitively just *what* facts conclusively demonstrate that particular hearsay qualifies as testimonial.  [Citation.]  However, it has never held a hearsay statement to be testimonial unless it was sufficiently formal and made by or to a government agent during the course of a criminal investigation, for the primary purpose of preserving evidence for trial.' ([Citation]; see also *Ohio v. Clark* (2015) 576 U.S. 237, 246 ['Because at least some statements to individuals who are not law enforcement officers could conceivably raise confrontation concerns, we decline to adopt a categorical rule excluding them from the Sixth Amendment's reach.  Nevertheless, such statements are much less likely to be testimonial than statements to law enforcement officers'].)" (*People v. Alvarez* (2025) 18 Cal.5th 387, 461.)  The statements at issue here do not meet these criteria.

Defendant's argument that the statements are testimonial relies on a court of appeal decision, *People v. Sisavath* (2004) 118 Cal.App.4th 1396, that predated *Davis v. Washington* (2006) 547 U.S. 813 and held that "[t]he pertinent question is whether an objective observer would reasonably expect the statement to be *available for use* in a prosecution." (*Sisavath, supra*, at pp. 1402-1403.)  Defendant argues an objective observer would reasonably expect the statements at issue would be available for use in

13

prosecution because the jail calls in particular began with the warning that calls were subject to recording and monitoring.  Moreover, he asserts he and Doe were speaking and texting using aliases because they understood their statements could be used against them.  "[I]n *Davis* the United States Supreme Court has since refined the definition of testimonial statements."  (*People v. Cage* (2007) 40 Cal.4th 965, 989.)  Indeed, "*Davis* now confirms that the proper focus is not on the mere reasonable chance that an out-of-court statement might later be used in a criminal trial."  (*Id.* at p. 984, fn. 14.)  "Rather, a critical consideration is the primary purpose of the police in eliciting the statements."  (*People v. Romero* (2008) 44 Cal.4th 386, 422.)[5]  Additionally, "*Sisavath* is readily distinguishable because there the 'interview took place after a prosecution was initiated, was attended by the prosecutor and the prosecutor's investigator, and was conducted by a person trained in forensic interviewing.' "  (*People v. Alvarez, supra*, 18 Cal.5th at p. 463.)  Defendant offers no other support for the suggestion that merely because the government records a conversation, that conversation becomes testimonial.  We reject his assertion.

D.     *No Cumulative Error*

Defendant contends his convictions must be reversed because of the cumulative effect of his alleged errors.  "There was, however, no error to cumulate."  (*People v. Phillips* (2000) 22 Cal.4th 226, 244.)

---

[5]  "[I]n [*Davis*], the high court gave this explanation: 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " (*People v. Romero, supra*, 44 Cal.4th at p. 421.)

*E.    Denial of Romero Motion*

Defendant argues the trial court abused its discretion by denying his so-called *Romero* motion to strike his prior strike conviction. We find no abuse of discretion.

Prior to his sentencing hearing, defendant filed a motion pursuant to *People v. Romero* (1996) 13 Cal.4th 497 (*Romero*) asking the court to dismiss the prior strike allegation in the furtherance of justice pursuant to section 1385. Defendant argued the court should dismiss his prior strike because otherwise it would result in punishment "disproportionate to the severity of the present offense" and because he "demonstrates a willingness and ability to rehabilitate himself."

The prosecution opposed the motion, noting that defendant "suffered the prior strike a mere six weeks prior to committing the present offense and was on parole when he committed the present offense," has multiple recent felony convictions, and "failed to rehabilitate despite grants of probation with a myriad of rehabilitative orders and opportunities." At the time he committed the prior strike offense, defendant was on "multiple grants of mandatory community supervision or felony probation." Further, defendant has been assessed as a "high risk of violence."

Defendant filed an amended *Romero* motion adding arguments that the court should dismiss his prior strike in the interests of justice because the offense was connected to mental illness and prior childhood trauma. (§ 1385, subd. (c)(2)(D)-(E).)

On appeal, defendant argues the current offenses were "not particularly serious" because they "involved domestic violence with resulting bruising" and no weapons and were "not the type of violent crimes that the Three Strikes law was primarily designed to address." Defendant similarly argues the prior strike "was not of the gravest nature" because it did not involve great bodily injury or a firearm. In the first degree residential burglary, defendant broke into a home and left with a decorative knife. Defendant argues he demonstrated a willingness to rehabilitate by completing a four-hour domestic violence class and submitting letters of support. Defendant contends he suffered

15

significant childhood trauma within the meaning of section 1385, subdivision (c)(2)(E). He also argues mental health conditions made his youth difficult. Further, he "was only 24 years old and had no significant record of prior violent criminal offenses." He also asserts as a mitigating circumstance that Doe provoked him.

Subdivision (a) of section 1385 provides that a judge may, in furtherance of justice, dismiss a criminal action. In *Romero*, our Supreme Court held that a trial court may utilize this provision to strike or dismiss a prior strike conviction for purposes of sentencing under the Three Strikes law. (*Romero, supra,* 13 Cal.4th at p. 504.) In ruling on a *Romero* motion, the court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "This review is deferential. . . . [A]n appellate court may not substitute its judgment about appropriate sentencing for that of the trial court, but instead must give due regard to the discretion vested in that court. [Citations.] The appellate court can find a reversible abuse of discretion only if it concludes that no reasonable judge would have agreed with the trial court's decision. [Citations.] Unless that standard is met, the appellate court must affirm the decision, even if it 'might have ruled differently' on the *Romero* motion 'in the first instance.'" (*People v. Dain* (2025) 18 Cal.5th 246, 258.) "Abuse of discretion in failing to strike a prior conviction occurs in limited circumstances: where the trial court is not aware of its discretion; where the trial court considers impermissible factors; or where applying the Three Strikes law would produce an arbitrary, capricious, or patently absurd result under the specific facts of a particular case. [Citation.] A reviewing court's disagreement with

16

the trial court's weighing of proper factors (as distinct from the trial court's reliance on improper factors in the weighing process) does not constitute an abuse of discretion." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029; see *Carmony, supra*, at pp. 378-379.)

On this record, we cannot conclude the trial court abused its discretion. Defendant's suggestion that because the court set forth the reasons it decided not to strike defendant's prior strike, it did not consider all the circumstances and arguments in favor of doing so is unpersuasive. The trial court was not required to give "great weight" to any mitigating factors under section 1385, subdivision (c)(2). (See e.g. *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338 [the Three Strikes law is an alternative sentencing scheme not impacted by § 1385, subd. (c)].) The record reflects that the trial court considered defendant's mitigating evidence and arguments and nonetheless concluded that defendant still "fit squarely within the [T]hree [S]trikes law for the following reasons: [¶] [He] was on parole for his prior strike when this offense occurred, very recently placed on parole. [¶] . . . [¶] His prior attempts at rehabilitation have failed despite numerous grants of probation and mandatory supervision. He's considered a high risk to reoffend. [¶] And this is a very serious case that he was adjudicated guilty by a jury. [¶] I just honestly think it would be an abuse of discretion for the Court to grant this Romero motion in this case. I do not find that it would be in the interest of justice to exercise the Court's discretion, and I'm declining to strike the prior conviction." We cannot conclude this decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra*, 33 Cal.4th at p. 377.) Defendant headbutted and strangled Doe repeatedly. Defendant's attempts to downplay his present crimes are not ones the trial court was required to find successful. Likewise, defendant's assertions that he demonstrated a willingness to rehabilitate were not conclusions the court was required to come to based on this record. We discern no abuse of discretion.

17

*F.   Presentence Credit*

Defendant contends, and the People concede, that the trial court incorrectly awarded him 304 days of actual credit and 304 days of conduct credit for a total presentence custody credit of 608 days instead of 310 days of actual credit and 310 days of conduct credit for a total of 620 days.  The miscalculation appears to be the result of the trial court failing to include the fact defendant was in custody from his initial arrest on March 23, 2023, until March 28, 2023, before being arrested again on April 19, 2023.  We accept the concession and order the judgment modified to reflect 620 days of presentence credit.  (*People v. Guillen* (1994) 25 Cal.App.4th 756, 764.)

### III.  DISPOSITION

The judgment is modified to reflect that defendant is awarded 310 days of actual custody credit and 310 days of conduct credit, for a total of 620 days of presentence credit.  The trial court is ordered to prepare an amended abstract of judgment reflecting this modification and further ordered to forward a certified copy of the amended abstract of judgment to the Department of Corrections.  In all other respects, the judgment is affirmed.

/S/

_____

RENNER, Acting P. J.

We concur:

/S/

_____

BOULWARE EURIE, J.

/S/

_____

FEINBERG, J.

18